330

UNITED STATES of America,
Appellant,

v.

Daisey L. CUNNINGHAM and Beatrice
I. Cunningham, owners of Tract No. 10,
and W. A. Worth and wife, Ethel E.
Worth, and Oregon Inlet, Inc., owners
of Tract No. 12, Appellees.

In the Matter of UNITED STATES of
America, Plaintiff,

v.

SOUTHERLY PORTION OF BODIE IS-
LAND, NAGS HEAD TOWNSHIP,
DARE COUNTY, State of NORTH
CAROLINA, and W. A. Worth, et al.,
and unknown owners, Defendants.

No. 7402.

United States Court of Appeals
Fourth Circuit.

Argued May 28, 1957.

Decided July 18, 1957.

See also, 114 F.Supp. 427.

Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen.; Julian T. Gaskill, United States Atty., Goldsboro, N. C., and Clyde E. Gooch, Asst. United States Atty., Salisbury, N. C., on brief), for appellant.

Hubert Humphrey, Jr., and L. P. McLendon, Sr., Greensboro, N. C. (Brooks, McLendon, Brim & Holderness, Greensboro. N. C., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by the United States from a judgment awarding compensation in an action for the condemnation of land. Three questions are raised by the appeal: (1) whether it was error to appoint commissioners for the trial of the issue of just compensation in the face of a demand by the government for a jury trial; (2) whether the report of the commissioners was sufficient to furnish an adequate basis of review by the District Court and by this Court; and (3) whether the inadequacy of the report of the commissioners was cured by the findings of the District Judge. We think that all of these questions should be answered in the negative and that, while the appointment of the commissioners should be sustained, the judgment below should be vacated and the case remanded to the end that the commissioners may make adequate findings as to the basic and evidentiary facts upon which their valuations are based and that their report may then be reviewed by the District Judge in the light of such findings.

The property, which was taken on June 25, 1953, consists of a peninsula four miles long and one mile wide, containing approximately 1858 acres, lying on the outer banks of North Carolina between the Atlantic Ocean and Roanoke Sound. While the property was largely undeveloped, it was near the Nags Head beach area and was capable of development as beach property for residential and commercial use. There was much testimony as to the value of the ocean front lots and other lots and as to a portion not suitable for lots but for the development of a sport fishing area. A public highway had recently been built across the property which had enhanced its value; and its value had been enhanced also by the creation of an artificial lake. It had been used as a hunting club and there were a number of buildings on it including a dwelling house of twelve rooms, a smaller

dwelling house, a boat house, a garage and stables. A mineral, ilmenite, had been found on the property and evidence was offered as to its value. The property owner himself testified that he thought that this increased the value of the property to the extent of $100,000.

. The court found that, because of the character, location and quantity of the property, the contention as to the presence and value of minerals, the distance of the property from the nearest place where the court could sit, the importance of having the land viewed by those who were to value it and the convenience of parties and witnesses, it was in the interest of justice that the issues of compensation be determined by a commission of three persons rather than by a jury, and proceeded to appoint such commission, laying down in an order the principles which were to be observed by them in the discharge of their duties. The commissioners conducted a lengthy hearing and carefully examined the property, going over it by foot, by motor vehicle, by boat and by helicopter. They reported to the court the evidence which they had taken and the objections which had been entered thereto, without, however, ruling on the objections or indicating what parts of the evidence, if any, had not been considered or in what respect other portions had been considered in arriving at valuations. In their report, they made no findings as to the basic or evidentiary facts upon which their valuations were based, but reported merely that they found as a fact that the fair market value of the property at the time of taking was $488,000. The government filed exceptions to the report on the ground that it did not contain "conclusions of law and findings of evidentiary, basic or primary facts" and that the record contained irrelevant and incompetent testimony upon which no ruling had been made by the commission.

▪ We think that there can be no question but that the District Judge was acting well within the limits of the discretion reposed in him by Rule 71A(h) Fed.Rules Civ.Proc., 28 U.S.C.A. in ap-

pointing the commission in this case and that no abuse of the discretion is shown. The pertinent portion of that rule provides:

"* * * any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it."

It is true that the rule prescribes "trial by jury as the usual and customary procedure to be followed, if demanded, * * * and as authorizing reference to commissioners only in cases wherein the judge, in the exercise of a sound discretion based upon reasons appearing in the case, finds that the interests of justice so require". Report Judicial Conference of United States March 1952, pp. 8 and 9. The trial judge found here that the interests of justice required the appointment of the commission and this finding was made upon reasons appearing in the case and set forth in his order of appointment. There can be no question but that they were adequate. The quantity of the land, its availability for beach residential development, the elements of value presented by its availability for hunting and sport fishing, the question as to whether the discovery of ilmenite added to its value, the importance of its being carefully gone over by those who were to value it and the impracticability of having a jury do this in view of its distance from the place where the nearest federal court was held, —all these things taken together certainly justified the appointment of a commission, which would not only serve the convenience of parties and witnesses and make a personal examination of the premises, but which, composed as it was of a distinguished lawyer and two experienced real estate dealers, would bring

to the difficult questions of valuation presented an expertness which could not be expected of a jury. Certainly the appointment of the commission could not be held an abuse of discretion. United States v. Wallace, 10 Cir., 201 F.2d 65; United States v. Waymire, 10 Cir., 202 F.2d 550; United States v. Chamberlain Wholesale Grocery Co., 8 Cir., 226 F.2d 492.

██ The very reasons which justify the appointment of the commission, however, demonstrate the inadequacy of the commission's report. The justification of the appointment is the variety and complexity of the matters to be considered on the question of valuation and the importance of having these adequately set forth in a report so that they may be subjected to the scrutiny of the District Court and of this court upon review and the proper principles of valuation applied to them. Any adequate review of the facts or of the legal principles followed in basing valuations on the facts is defeated if a report by the commission is of such a character that it amounts to no more than a general verdict by a jury.[1] The verdict of a jury of twelve men may reasonably be dispensed with if commissioners make a report which furnishes an adequate basis of review by the trial judge and the appellate court, but not if the report furnishes no such basis. Just as a judge in a trial without a jury is required to make adequate findings so that his conclusions may be reviewed by the appellate court[2] so a master, in an action to be tried without a jury, is required to make findings of fact so that his conclusions may be adequately reviewed by the trial judge,[3] who is required to accept them "unless clearly erroneous" (Rule 53(e) (2)), and this practice with respect to the report of a master is prescribed by Rule 71A(h) with respect to reports of commissioners in condemnation proceedings.

██ Here the different values of various parts of the land, the different uses for which some parts of it were available, the differences in value which it would have for these various uses, the requirement that only the most valuable use be accepted in valuation, all of these made it essential, if there was to be any adequate review of the report of the commissioners, that they make specific findings as to the matters on which their valuations were based and show in their report how they applied the applicable principles of law in reaching their ultimate conclusions. Particularly was this important in view of the fact that there were numerous objections to testimony, some of which was held by the lower court to be irrelevant and incompetent; and in the absence of such findings it is impossible to determine to what extent, if any, this testimony entered into the commission's valuation. Furthermore, there was considerable testimony as to value of special portions of the land and as to values of portions thereof for special purposes. This testimony was admissible as bearing on the question of valuation, even though it was required that the property be valued as a whole. Cade v. United States, 4 Cir., 213 F.2d 138. It would not be proper, however, to attempt to arrive at value by adding these elements of value together. Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884; United States v. Certain Parcels of Land, 5 Cir., 149 F.2d 81. It was not necessary that the Commission rule on the admissibility of testimony and exclude that which was incompetent or that it state that it was

---

1. The case is very different from United States v. Pendergrast, 4 Cir., 241 F.2d 687, where the issues were simple and we held that the decision below could be reviewed as well without findings as with them.

2. F.R.C.P. 52(a); Hatahley v. United States, 351 U.S. 173, 182, 76 S.Ct. 745, 100 L.Ed. 1065; Dalehite v. United States, 346 U.S. 15, 24 note 8, 73 S.Ct. 956, 97 L.Ed. 1427; Kelley v. Everglades Drainage District, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485, and cases there cited.

3. See Moore's Federal Practice 2d ed. 1951 sec. 53.12(3) pp. 2978–2979; Helfer v. Carona Products Co., 8 Cir., 127 F.2d 612, 614–615.

admitting for a limited purpose testimony which was admissible only for such purpose; but, for any intelligent review of its findings to be made, it was necessary that the commission indicate what use, if any, it had made of such testimony in arriving at its valuations.

■ We do not think that the defective nature of the report was cured by the findings made by the judge. It is true that his findings are full and comprehensive; but, after making these findings, he did not make a valuation based thereon or on his own evaluation of the testimony in the cause, but accepted the valuation of the commission, saying:

"My belief is that the value fixed by the Commissioners is probably greater than the land would have sold for on the open market on the date of the taking. I have known the land for many years and am acquainted in somewhat more than a general way with its nature and topography, the uses to which it might be put, and the factors which might have influenced the market value. And I have acquainted myself with the evidence heard by the Commissioners. I am quite sure that the valuation found by the Commissioners is greater than I would have found from what I have seen and upon the transcript of the evidence. However, the Commissioners, who are experienced men and entirely impartial, viewed the lands from the air, from the water and on the ground, and, besides, heard the witnesses give their testimony. I have the utmost confidence in their integrity and their judgment. There is no reason to question either. Under the rule and the cases I must accept their finding unless I find it 'clearly erroneous.' This I do not and cannot find. It is one thing for me to feel that I would have placed a lower value on the land and quite another thing for me to find that their finding is clearly erroneous and substitute my own finding for theirs,

ignoring their judgment and integrity, the fact that they critically inspected the land, and also the fact that they heard the witnesses give their testimony."

And in denying the petition for rehearing he said:

"* * * the Court wishes to make it clear that the Court did not and does not undertake to say that the award made by the Commissioners was in any respect unfair or erroneous or that it exceeded the fair market value of the land in question on the date of taking. The Commissioners examined the land with great care. They heard the witnesses testify and were able to judge both their credibility and their knowledge of the land and its value, *and the Court is not justified in substituting its idea of the probable value of the land,* based upon the Court's general knowledge of it without minute and careful examination, for the conclusions arrived at by the Commissioners. The personal opinion expressed by the Court was not intended to reflect in any manner, upon the accuracy and soundness of the conclusions of the Commissioners with respect to the amount of just compensation to which the property owner is entitled; and the Court wishes to repeat, the award of the Commissioners is supported by abundant and competent evidence and is accepted by the Court without any reservations as to its reasonableness and fairness to both the plaintiff and the property owner." (Italics supplied.)

It is perfectly clear from these passages that the judge was accepting the valuations of the commission under the "clearly erroneous" rule, not making an independent valuation of his own, as in cases where the findings of the commission are set aside. He states clearly that the valuations fixed by the commission, and which he adopts, were higher than he would have fixed them on the record before him. It is not pos-

sible to say whether, in fixing their valuations, the commissioners did or did not include matters as to which the trial judge would have held their findings or action to have been clearly erroneous if they had been set forth in proper findings. The judgment below must be vacated, therefore, and the case remanded to the court below with direction that it be remanded to the commission to the end that proper findings as to the basic facts may be made and that the commission may set forth the principles of law which it applies in arriving at its conclusion as to value.

Vacated and remanded with directions.